**SIGNED THIS: May 29, 2009**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| BRIAN LEE HITCH and | ) | |
| KRISTI LYNN HITCH, | ) | Case No. 07-70803 |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| JASON SCHAFER and | ) | |
| KENNA SCHAFER, | ) | Case No. 08-72299 |
| | ) | |
| Debtors. | ) | |

# O P I N I O N

The issue before the Court in each of the above-captioned Chapter 13 cases is whether costs incurred by an under-secured creditor in the post-petition liquidation of collateral may be

-1-

included and allowed in that creditor's subsequently-filed unsecured deficiency claim. In each case here, a creditor has filed an unsecured deficiency claim which includes such costs. The Trustee has objected to each claim, maintaining that 11 U.S.C. §506(b) bars an under-secured or totally unsecured creditor from recovering such costs when the costs are incurred post-petition. For the reasons set forth below, the Court will sustain the Trustee's objections.

## FACTUAL BACKGROUND - HITCH

The material facts of this case are not in dispute. On June 14, 2005, Brian Lee Hitch and Kristi Lynn Hitch purchased a 2005 Pontiac VIBE automobile. The Hitches financed the purchase through Prairieland Federal Credit Union ("PFCU"). The Hitches entered into a retail installment contract which required the Hitches to make monthly installment payments to PFCU and granted a security interest in the vehicle to PFCU. PFCU properly perfected its security interest in the vehicle by noting its lien on the certificate of title.

On April 23, 2007, the Hitches filed their petition under Chapter 13 of the Bankruptcy Code. On June 6, 2007, PFCU filed a secured proof of claim (Claim #5) in the amount of $16,062.10. The Hitches' Third Amended Chapter 13 Plan, which was confirmed on February 19, 2008, provided that the Hitches would make their

regular monthly post-petition payments directly to PFCU.

The Hitches fell in arrears on the PFCU loan, and PFCU filed a motion for relief from the automatic stay. No objections were filed to the motion, and the stay was modified as to the vehicle by an order entered on August 14, 2008. The vehicle was sold on October 9, 2008, for $11,520.08. According to PFCU - and it is not disputed - the principal balance on the note at the time of the sale was $13,635.97, leaving a deficiency of $2115.89. In repossessing and selling the vehicle, PFCU incurred a repossession charge of $275, a consignor fee of $375, and a selling fee of $375, for total costs of $1025. On November 20, 2008, PFCU filed its Amended Claim #5 in the amount of $3140.89, consisting of the unsecured deficiency of $2115.89 plus the $1025 in costs. On November 21, 2008, John H. Germeraad, Chapter 13 Trustee ("Trustee"), filed his objection wherein he asserts that the Amended Claim #5 should be limited to the $2115.89 deficiency. Trustee does not dispute the necessity or reasonableness of the repossession and sales costs. Rather, he contends that such costs are only allowed to over-secured creditors as set forth in 11 U.S.C. §506(b). The Trustee and PFCU have briefed the issue.

## FACTUAL BACKGROUND - SCHAFER

The material facts of this case are also not in dispute. On February 2, 2005, Jason and Kenna Schafer purchased a 2002 Honda

Odyssey minivan. The Schafers financed their purchase through AmeriCredit Financial Services, Inc. ("AFS"). The Shafers entered into a retail installment contract which required monthly installment payments to be made to AFS and granted a security interest in the minivan to AFS. AFS properly perfected its security interest in the minivan by noting its lien on the certificate of title.

On September 18, 2008, the Schafers filed their petition under Chapter 13 of the Bankruptcy Code. On October 9, 2008, AFS filed a claim (Claim #1), labeled as an unsecured deficiency claim, in the amount of $13,645.21. On October 10, 2008, AFS filed a motion to modify the automatic stay. No objections were raised to the motion, and an order granting the motion was entered on November 3, 2008. The Schafers later sought to have the order modifying the automatic stay vacated but that request was denied. Thereafter, because the Schafers' original Chapter 13 Plan provided for payment of AFS as a secured creditor, a First Amended Plan was filed which removed the proposed payments to AFS and treated AFS as a general unsecured creditor. The Schafers' Second Amended Plan, which also treats AFS as a general unsecured creditor, was confirmed on March 17, 2009.

In the meantime, the minivan was sold on January 7, 2009, for $3300.00. According to AFS - and it is not disputed - the principal balance on the note at the time of the sale was

$13,645.21, leaving a deficiency of $10,345.21.  In repossessing and selling the vehicle, AFS incurred a repossession charge of $405 and an auction fee of $313, for total costs of $718.  On January 16, 2009, AFS filed its Amended Claim #1 in the amount of $11,063.21, consisting of the deficiency of $10,345.21 plus the $718 in costs.  On February 5, 2009, Trustee filed his objection wherein he prays that the Amended Claim #1 be limited to the $10,345.21 deficiency.  Trustee does not dispute the necessity or reasonableness of the repossession and sales costs.  Rather, he contends that such costs are only allowed to over-secured creditors as set forth in 11 U.S.C. §506(b).  Both the Trustee and AFS have briefed the issue.

## ANALYSIS

The procedural history of the Hitches' case merits a few initial comments before delving into the substantive issues at hand.  The Hitches have a confirmed Chapter 13 Plan in place under which they are obligated to make ongoing monthly payments to PFCU.  Neither the Hitches nor any other party has sought modification of the confirmed Plan, and the Order confirming the Plan is still in full force and effect.  Whether modification of the Plan reclassifying PFCU's claim as an unsecured claim is necessary or permissible has not been raised.  Courts are distinctly divided on this issue.  *See* In re Amador, 2008 WL 1336962 *at* *2 (Bankr. S.D.

Fla. Apr. 9, 2008).  Although ignored by the parties here, a multitude of issues may arise when a secured creditor repossesses collateral after confirmation of a Chapter 13 plan which provided for the debtor to retain the collateral and pay the creditor's allowed secured claim.  For a thorough analysis of the issues which may arise with the post-confirmation surrender or repossession of collateral, see Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d ed., §264.1 (2000 & Supp. 2004).

The parties in the Hitch case appear to have assumed that, by PFCU amending its claim, modification of the confirmed Plan is unnecessary, or, perhaps, impermissible.  However, because of the procedural path this case has taken, due process concerns arise relating to the effect that the allowance of PFCU's amended claim will have on the dividend that will ultimately be paid to other unsecured creditors.  Also, because plan modification has not been proposed, the "good faith" test of 11 U.S.C. §1329(b)(1) has not been applied to the changes in plan distributions that will occur upon allowance of PFCU's unsecured deficiency claim.  The Hitches' original plan payments were calculated based on the assumption that they would be making their regular payments to PFCU each month.  Those payments ceased many months ago and the Hitches' current use of the funds originally committed to the PFCU payments is unknown.  None of those funds are proposed to be paid into the Plan.  Unsecured creditors will certainly receive less than previously

proposed in the confirmed Second Amended Plan if PFCU now shares in the unsecured creditors' pool of funds, but unsecured creditors have received no particular notice of this change in their circumstances. It is difficult to envision how proceeding in this fashion complies with the minimum requirements of due process.

The Court must, however, decide the matter which is before it and will proceed to do so.  Nothing in this Court's decision here will, however, preclude any party in the Hitch case from seeking plan modification or other relief as may be appropriate.

In order to determine whether a claim is an allowable claim, one first looks to 11 U.S.C. §502, which provides:  "A claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. §502(a).  In the event an objection to a claim is filed, §502(b) provides that the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition" and that the claim shall be allowed in the amount determined  "except to the extent" that the claim implicates any of the nine exceptions (none of which is relevant here) enumerated in §502(b).  11 U.S.C. §502(b).  Thus, under §502, the unsecured deficiency claims of both PFCU and AFS should be allowed with the amount of each claim being the only issue for the Court to determine.

To determine the amount of each claim and, specifically, to

determine whether the amount may include the claimed costs, one must next consider the provisions of §506 of the Bankruptcy Code. Section 506(a) differentiates between secured claims and unsecured claims. A claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. §506(a)(1).

Section 506(b) provides in pertinent part as follows:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. §506(b).

Under the plain language of §506(b), a secured creditor can recover post-petition interest, fees, costs, and charges provided by contract or state law only to the extent that its collateral is worth more than the claim. Section 506(b)'s silence with respect to unsecured and under-secured creditors points to the conclusion that these creditors are not entitled to post-petition fees and costs. Courts that have disallowed post-petition fees and costs have invoked the legal maxim "*expressio unius est exclusio alterius*", *i.e.* the expression of one thing is the exclusion of another, to support their conclusion that §506(b) does not allow post-petition fees and costs to unsecured or under-secured creditors. *See* In re Electric Machinery Enterprises, Inc., 371 B.R. 549, 550 (Bankr. M.D. Fla. 2007); In re Pride Companies, L.P.,

285 B.R. 366, 372 (Bankr. N.D. Tex. 2002). As stated by the Supreme Court, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of contrary legislative intent." Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980). Section 506(b) provides an exception for over-secured creditors to the general rule that claims are to be determined as of the petition date, exclusive of post-petition fees and costs. If Congress had intended for unsecured and under-secured creditors to receive post-petition fees and costs, then it could have easily done so. Because it did not do so, the plain language of §506(b) demonstrates Congressional intent to disallow post-petition fees and costs for all creditors whose claims are not over-secured. In re Sakowitz, Inc., 110 B.R. 268, 272 (Bankr. S.D. Tex. 1989); Pride Companies, 285 B.R. *at* 372; In re Hedged-Investments Associates, Inc., 293 B.R. 523, 526 (D. Colo. 2003).

The provisions of §506 are frequently referenced in analyzing and allowing claims in Chapter 13 cases. Under Chapter 13, a debtor may propose to retain collateral in exchange for monthly payments totaling the value of a creditor's allowed secured claim. 11 U.S.C. §1325(a)(5)(B). In instances where the debtor proposes to pay less than the amount owed because the value of the collateral is less than the amount owed, the practice is commonly

referred to as "cramdown". <u>Associates Commercial Corp. v. Rash</u>, 520 U.S. 953, 957, 117 S.Ct. 1879, 1882-83, 138 L.Ed.2d 148 (1997). The amount of an allowed secured claim - the cramdown value - is determined by reference to §506(a). <u>Id.</u> However, the practice of cramming down was restricted when the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") took effect on October 17, 2005. One provision of BAPCPA prohibits Chapter 13 debtors from utilizing §506(a) to cram down claims of creditors who have a purchase money security interest in a motor vehicle acquired for the debtor's personal use if the debt was incurred within 910 days of the date of filing:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. §1325(a).

Because the above provision has no separate alphabetical or numerical designation, it is known, in bankruptcy parlance, as the "hanging paragraph" and vehicles covered by the hanging paragraph are commonly referred to as "910 vehicles".

The Hitches filed their bankruptcy case after the effective date of BAPCPA. Because the Hitches purchased their vehicle for

-10-

personal use within 910 days of their bankruptcy filing, the hanging paragraph applies. The Hitches were evidently cognizant of this fact inasmuch as they proposed in their Plan to continue making their regular monthly payments to PFCU and did not seek to cram down PFCU's secured claim.

Because PFCU's original allowed secured claim was based on a 910 vehicle and was, therefore, governed by the terms of the hanging paragraph, PFCU now argues that the hanging paragraph also requires the allowance of its unsecured claim for the costs of repossession and sale. PFCU contends that the amount of its unsecured claim is determined not by reference to 506(b), but by its rights and entitlements under its retail installment contract with the Hitches. Because the retail installment contract provides that expenses for taking possession and selling the collateral are to be born by the borrowers, PFCU asserts that it is entitled to reasonable costs of taking possession and selling the vehicle.

PFCU's argument ignores the limiting language of the first few words of the "hanging paragraph" - "For purposes of paragraph (5)". Paragraph 5 of §1325(a) outlines the required treatment of allowed secured claims for the purpose of determining whether a Chapter 13 plan may be confirmed. In this case, proper treatment of PFCU's original claim was proposed in the Hitches' Third Amended Plan. The issue before the Court now is not how PFCU's original allowed secured claim should have been treated, but rather how PFCU's

amended, fully unsecured claim should now be treated.  Because §1325(a)(5) is irrelevant to the treatment of the amended, unsecured claim, the hanging paragraph does not apply to the analysis and, accordingly, §506(b) does apply.

The Schafers also filed their bankruptcy case after the effective date of BAPCPA.  However, the Schafers purchased the minivan financed by AFS more than 910 days prior to their case filing.  Thus, AFS concedes that the hanging paragraph does not apply in this case.  Nevertheless, AFS also argues that §506(b) should not be applied in determining the amount of its unsecured deficiency claim.

AFS relies on several cases which hold that, upon surrender of collateral to a secured creditor, collateral is no longer property of the estate and the provisions of §506(a) no longer need be utilized to determine the amount of such creditor's secured claim.  *See* In re Blanco, 363 B.R. 896 (Bankr. N.D. Ill. 2007); In re Morales, 359 B.R. 211 (Bankr. N.D. Ill. 2007).  Both cases involved the issue of whether a secured creditor may be allowed an unsecured deficiency claim after liquidation of its collateral and both cases held that such a claim could be allowed.  Neither case involved how such a deficiency claim should be calculated and neither case even discussed whether §506(b) is applicable in determining the amount of such deficiency claim.  The cases are not on point with the issues here and do not provide support for the argument that post-

petition costs of sale may be added to an unsecured deficiency claim.

Both PFCU and AFS also assert that the Seventh Circuit's decision in In re Wright, 492 F.3d 829 (7th Cir. 2007), supports their positions. However, the issues here and in Wright are dissimilar. In Wright, the court was concerned with what happens when a Chapter 13 debtor proposes a plan which includes the surrender of a 910 vehicle. Does the surrender fully satisfy the debtor's obligations, or is the creditor entitled to an unsecured deficiency claim after surrender of the collateral? The court concluded that any shortfall between the value of the vehicle and the balance of the loan after the debtor surrendered the vehicle may be included in an unsecured deficiency claim and paid at the same rate or "fraction" as other unsecured creditors. Id. *at* 833. Wright does not discuss how a deficiency claim should be calculated but relies on a series of cases which suggest that the treatment of an unsecured deficiency claim should be the same as the treatment of other unsecured claims. Id. *at* 831. In the cases at bar, treating the amended deficiency claims of PFCU and AFS like other unsecured debts means that the PFCU and AFS are not entitled to post-petition costs.

Equitable considerations and policy reasons also dictate disallowing post-petition fees and costs to unsecured creditors. One of the primary goals of bankruptcy law is to provide for the

equitable distribution of a debtor's assets among its creditors. Electric Machinery Enterprises, 371 B.R. *at* 551. Similarly situated creditors should be treated equally. Id. To allow the enforcement of a contractual provision which would permit certain unsecured creditors but not others to charge the bankruptcy estate for post-petition costs would violate the basic bankruptcy principle of equitable distribution. Pride Companies, L.P., 285 B.R. *at* 373-74.

For the reasons set forth above, Trustee's Objection to Amended Claim #5 filed by PFCU on November 20, 2008, in the Hitch case is sustained. The Amended Claim #5 of PFCU will be allowed in the amount of $2115.89. Additionally, Trustee's Objection to Amended Claim #1 filed by AFS on January 16, 2009, in the Schafer case is sustained. The Amended Claim #1 of AFS will be allowed in the amount of $10,345.21.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Orders.

###